*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

GARY EDWARD SHUMATE,

Defendant-Appellant.

UNPUBLISHED
August 07, 2026
11:44 AM

No. 372719
Lenawee Circuit Court
LC No. 2023-021507-FC

Before: ACKERMAN, P.J., and BAZZI and LIEVENSE, JJ.

PER CURIAM.

Defendant, Gary Edward Shumate, appeals as of right his jury-trial convictions of four counts of first-degree criminal sexual conduct (CSC-I) (sexual penetration of a person under 13 years of age), MCL 750.520b(1)(a). Shumate was sentenced to 209 to 600 months' incarceration for each CSC-I conviction. We affirm Shumate's convictions and sentences but remand for the ministerial task of correcting Shumate's sentencing investigation report (SIR).

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arose in 1997, when five-year-old AM resided with her mother, her brother, and her father, Shumate. One day, Shumate instructed AM to bring her friend, JK, to their home in order for the three to play a game. After JK arrived, Shumate led the children into his bedroom and informed them he wanted to play a game. Shumate blindfolded the children and forced them to touch his penis and perform oral sex on him. On three occasions in 1997, while AM was in the living room with her brother, Shumate escorted AM to the bathroom and removed her pants before penetrating her anally with his penis.

During one of the bathroom assaults, AM screamed out in pain, and her brother alerted their mother. After AM's mother became aware of the assaults, she moved the children out of the home. In 1998, Shumate pleaded guilty to assault with intent to commit second-degree criminal sexual conduct (CSC-II); MCL 750.520g(2), for his assault of JK. In 2023, the prosecution approached AM about her relationship with Shumate, and AM made a statement about the sexual abuse she experienced in 1997. Shumate was charged with four counts of CSC-I.

Before trial, the prosecution filed a notice of intent to use other-acts evidence under MCL 768.27a regarding the conduct underlying Shumate's CSC-II conviction through JK's testimony.[1] Shumate objected, arguing JK's testimony was inadmissible under MRE 403. The trial court admitted JK's testimony, finding the subject acts concerned the same behavior and complainants of the charged offenses.

At trial, AM described the pain she felt during the bathroom assaults. On cross-examination, AM admitted that during her previous interaction with the prosecution in 2023, she shared that she was angry with Shumate and wanted him dead. JK testified regarding the assault that occurred while she was blindfolded and further alleged that Shumate sexually assaulted her on two other occasions in 1997. Trooper Jason Mead of the Michigan State Police spoke with AM in 2023 and took her statement on behalf of the prosecution. On cross-examination, Trooper Mead explained this case arose from another case against Shumate involving a different child complainant. Shumate was found guilty by jury as previously provided.

At sentencing, Shumate objected to the assignment of points to offense variable (OV) 8 (victim asportation or captivity) and OV 9 (number of victims). Shumate argued OV 8 was improperly assessed 15 points for all four CSC-I counts, claiming he did not move AM to a more dangerous place. The trial court determined OV 8 was properly assessed because Shumate moved AM to the bathroom and bedroom, which aided in concealing the sexual abuse. Shumate argued OV 9 was improperly assessed 10 points for three counts of CSC-I, contending AM was the only victim during the bathroom assaults. The trial court agreed with the prosecution that AM's brother was in close proximity to the assaults and determined OV 9 was properly assessed at 10 points for three of the CSC-I counts. Shumate was sentenced as noted. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE; GREAT WEIGHT OF THE EVIDENCE

Shumate argues that the prosecution presented insufficient evidence to support his CSC-I convictions; alternatively, his CSC-I convictions were against the great weight of the evidence. We disagree.

"A defendant need not take any action to preserve a challenge to the sufficiency of the evidence." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). But, to preserve an argument that the verdict is against the great weight of the evidence, the defendant must move for a new trial on that basis. *Id*. Because Shumate did not move for a new trial on the ground that his convictions went against the great weight of the evidence, his great-weight-of-the-evidence challenge is not preserved. See *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "In examining the sufficiency of the evidence, 'this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Reese*, 491 Mich 127,

---

[1] The prosecution sought admission of the testimony of two other complainants, which the trial court denied; that matter is unrelated to the issues in the present appeal.

139; 815 NW2d 85 (2012), quoting *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "Circumstantial evidence and reasonable inferences drawn from it may be sufficient to prove the elements of the crime." *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Because Shumate's great-weight-of-the-evidence issue is unpreserved, we review that issue under the plain-error standard. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003).

In this case, Shumate was charged with CSC-I for three acts of "penis to anus" sexual penetration and one act of "penis to mouth" sexual penetration. "The elements of CSC-I under MCL 750.520b(1)(a) are that (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "CSC-I involves at least two people: (1) a person who engages in sexual penetration and (2) the 'other person' who is sexually penetrated." *People v Niemi*, 344 Mich App 25, 29; 998 NW2d 728 (2022). " 'Sexual penetration' is defined as 'sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body[.]' " *Id*., quoting MCL 750.520a(r). Shumate does not dispute his age or AM's age at the time of the offenses. He argues only that there was insufficient evidence that the penetrations occurred.

Shumate emphasizes AM's testimony that she never saw his penis during the alleged offenses. Shumate argues that given AM's admission that she never saw Shumate's penis, Shumate could have penetrated AM with his finger or another object. While AM detailed that she did not see Shumate's penis, AM testified that she felt Shumate penetrate her anus during the bathroom incidents, describing the assaults as "extremely uncomfortable" and "painful," which caused her to scream. AM further asserted that she felt Shumate place his penis in her mouth during the blindfold assault. JK was present during the incident and testified that she saw Shumate's penis before being blindfolded, noting Shumate placed a tootsie roll on it. Considering this evidence, a reasonable juror could infer that Shumate penetrated AM's anus and mouth based on her recollection of the offenses and JK's corroborating testimony. See *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018). Further, "it has long been settled that a complainant's testimony regarding a defendant's commission of sexual acts is sufficient evidence to support a conviction for CSC-I." *People v Bailey*, 310 Mich App 703, 713-714; 873 NW2d 855 (2015). Accordingly, viewing the evidence in the light most favorable to the prosecution, a rational trier

of fact could have found that the elements of CSC-I were proven beyond a reasonable doubt. *Lockett*, 295 Mich App at 187.

Shumate's great-weight-of-the-evidence challenge is likewise unavailing. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Knepper*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 363191); slip op at 5 (quotation marks and citation omitted). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). " 'Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial.' " *Id.* at 469-470, quoting *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). "Further, the resolution of credibility questions is within the exclusive province of the jury." *Lacalamita*, 286 Mich App at 470. " '[U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination.' " *Musser*, 259 Mich App at 219, quoting *Lemmon*, 456 Mich at 645-646. "Thus, to obtain a new trial, the defendant must establish that one of these circumstances exists, and that there is a 'real concern that an innocent person may have been convicted or that it would be a manifest injustice to allow the guilty verdict to stand.' " *Knepper*, ___ Mich App at ___; slip op at 6, quoting *Lemmon*, 456 Mich at 644.

In addition to reiterating his arguments regarding AM's statements that she did not see Shumate's penis during the subject incidents, Shumate contends that AM's testimony was so heavily impeached that it lacked probative value. Shumate highlights: (1) the inconsistencies in AM's testimony on cross-examination regarding what she told Children's Protective Services (CPS); (2) the delay from the time of the assaults to AM's disclosure to the prosecution; and (3) AM's statements that she wanted Shumate dead. But Shumate fails to demonstrate how these purported deficiencies in AM's testimony resulted in evidence preponderating so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.

On cross-examination, AM admitted she did not want to answer CPS's questions in 1997, claiming she thought the questions were "silly" and made her uncomfortable, and she could not recall if she denied the allegations against Shumate at that time. On direct examination, AM recounted feeling responsible for the abuse, stating, "I thought it was my fault, like I did something wrong. Like, I didn't know what was going on." AM reaffirmed her feelings on the matter on redirect examination, restating that she felt uncomfortable during CPS's questioning. AM further shared that she did not share what occurred until 2023 because she did not know that she could report the abuse after so much time had passed, and she disclosed it when the prosecution approached her. Further, AM did not deny informing the prosecution she wanted Shumate dead, explaining, "I may have said something out of heat of anger and frustration with the situation, but that doesn't necessarily mean that that's how I felt."

Even assuming AM's testimony was impeached to a certain extent, Shumate fails to indicate how this testimony was so far impeached that it was deprived of all probative value, that the jury could not believe it, that it contradicted indisputable physical facts, or that it defied

physical realities.  See *Musser*, 259 Mich App at 219.  Rather, other evidence, such as JK's testimony, provided circumstantial corroboration.  The evidence did not preponderate so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand.  Accordingly, Shumate's evidentiary challenges do not entitle him to relief.

### III.  OTHER-ACTS EVIDENCE

Shumate argues that the trial court erroneously admitted JK's testimony.  We disagree.

"A trial court's decision to admit evidence will not be disturbed absent an abuse of discretion."  *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017).  "However, whether a rule or statute precludes admission of evidence is a preliminary question of law that this Court reviews de novo."  *Id*.  "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes."  *People v McBurrows*, 322 Mich App 404, 411; 913 NW2d 342 (2017), aff'd 504 Mich 308 (2019).  "[A]n abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome."  *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003), clarification den 469 Mich 1224 (2003).  "[I]t is necessarily an abuse of discretion to admit legally inadmissible evidence."  *People v Lowrey*, 342 Mich App 99, 108; 993 NW2d 62 (2022).  "A preserved trial error in the admission of evidence does not constitute grounds for reversal 'unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative.' "  *People v Solloway*, 316 Mich App 174, 192; 891 NW2d 255 (2016), quoting *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

Shumate specifically claims that JK's testimony was inadmissible under MCL 768.27a, which states:

(1) Notwithstanding [MCL 768.27], in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant.  If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

(2) As used in this section:

(a) "Listed offense" means that term as defined in section 2 of the sex offenders registration act, 1994 PA 295, MCL 28.722.

(b) "Minor" means an individual less than 18 years of age.

MCL 768.27a "allows the prosecution to offer evidence of another sexual offense committed by the defendant against a minor without having to justify its admission under MRE 404(b)."  *Solloway*, 316 Mich App at 192.  "Because a defendant's propensity to commit a crime makes it

more probable that he committed the charged offense, MCL 768.27a permits the admission of evidence that MRE 404(b) precludes." *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012).

The record demonstrates JK's testimony was admissible under MCL 768.27a. Shumate was previously convicted of assault with intent to commit CSC-II, which is a listed offense under MCL 768.27a. See MCL 28.722(v)(*v*) (defining assault with intent to commit CSC-II as a tier III offense). As noted, JK was a minor at the time of the assault because she was five years old. MCL 768.27a(2)(b). The prosecution filed its notice on November 3, 2023. Shumate's trial commenced on February 27, 2024, or 116 days after the prosecution's notice. Accordingly, the requirements of MCL 768.27a were met for JK's testimony to be admissible.

However, "MRE 403 applies to evidence admissible under MCL 768.27a." *Watkins*, 491 Mich at 486. MRE 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Exclusion is required under MRE 403 only when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Head*, 323 Mich App 526, 541; 917 NW2d 752 (2018). "This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (quotation marks and citation omitted).

"All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible. It is only when the probative value is substantially outweighed by the danger of unfair prejudice that evidence is excluded." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). The *Watkins* Court provided a nonexhaustive list of considerations for determining the prejudicial effect of evidence admitted under MCL 768.27a, stating:

> These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

The *Watkins* considerations are to facilitate a trial court's analysis under MRE 403 rather than supplant it. *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 10.

Shumate contends JK's testimony was unfairly prejudicial because of the dissimilarities between JK's testimony and AM's testimony, and the lapse in time between the alleged abuse and JK's testimony. JK and AM provided different details regarding certain aspects of the blindfold assault, such as its location, whether Shumate forced the children to "jack him off," whether Shumate placed a tootsie roll on his penis, and the name of the "game." However, considering the testimonies collectively, JK and AM described a substantially similar scenario. Namely, both

testified that Shumate blindfolded the five-year-old children while playing a game and then coerced JK and AM into touching him and performing oral sex.

Shumate further asserts that JK's testimony regarding the two additional sexual abuse incidents that occurred outside AM's presence was wrongfully admitted. At trial, JK testified that (1) Shumate grabbed her while she was playing hide and seek with AM and rubbed his penis on her bare buttocks, and (2) Shumate touched her vagina while she was sleeping at his home. However, AM also testified regarding similar incidents. AM recalled waking up naked next to Shumate multiple times, despite not falling asleep in Shumate's bed or being unclothed. AM further asserted that Shumate penetrated her anally on numerous occasions in the bathroom. Additionally, AM and JK both testified that Shumate moved the children to a different room to perpetrate the abuse. While the two incidents JK testified about did not occur in AM's presence, they involved similar circumstances, including the time frame and age of the complainants, as well as the nature of the abuse.

Shumate next claims the time between the alleged incidents and JK's testimony rendered the evidence prejudicial. JK's testimony concerned events that predated the underlying trial by 27 years, but Shumate was convicted of sexually abusing AM in 1997, making JK's testimony more reliable. JK's and AM's assaults also both occurred in 1997, giving the contested testimony probative value as the incidents occurred in the same time period.

While Shumate did not address the other *Watkins* considerations, the remaining factors reinforced the trial court's decision. Shumate's guilty plea corroborated JK's account of the conduct underlying that conviction, thereby supporting the reliability of her testimony concerning that incident. The trial court contemplated these factors and stated:

> [S]o we have two prior incidents, one involving [JK]. In that case, the victim was the same age, same time period as this case, so while it was a long time ago, so was this underlying offense allegation, and it was the same type of alleged behavior as to the sexual act, so I do find that that prior act is admissible for the purposes of trial.

The court acknowledged the differences in the cases but concluded JK's testimony concerned similar behavior and occurred at the same time as AM's assaults. Accordingly, the trial court's decision was not "outside the range of principled outcomes." *McBurrows*, 322 Mich App at 411. Because the trial court did not err when it admitted JK's testimony, Shumate is not entitled to a new trial. See *Solloway*, 316 Mich App at 192.

## IV. PROSECUTORIAL MISCONDUCT[2]

Shumate argues that the prosecution engaged in misconduct. We disagree.

---

[2] "Although we recognize that the phrase 'prosecutorial misconduct' has become a term of art in criminal appeals, we agree that the term 'misconduct' is more appropriately applied to those extreme—and thankfully rare—instances where a prosecutor's conduct violates the rules of

When preserved, "[w]e generally review de novo claims of prosecutorial misconduct on a case-by-case basis, in the context of the issues raised at trial, to determine whether a defendant was denied a fair and impartial trial." *People v Fyda*, 288 Mich App 446, 460; 793 NW2d 712 (2010). Shumate failed to preserve this issue by making "contemporaneous objections and requests for curative instructions." *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). "Because the challenged prosecutorial statements in this case were not preserved by contemporaneous objections and requests for curative instructions, appellate review is for outcome-determinative, plain error." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. "They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. at 63. "A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence." *Id*. at 63-64.

## A. APPEAL TO SYMPATHY

Shumate argues the prosecution inappropriately appealed to the jury's sympathy to secure a conviction. "Appeals to the jury to sympathize with the victim constitute improper argument." *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001). "The prosecutor may not inject issues into a trial that are broader than the defendant's guilt or innocence." *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). "The prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *Id*.

Because this issue was unpreserved, Shumate must demonstrate an error occurred. *Carines*, 460 Mich at 763. Shumate claims the prosecution appealed to the jury's sympathy when making the following statement, "Think about this case, think about two five-year-old little girls, neighbors, friends and what this did." Shumate argues that by referring to AM and JK as "five-year-old little girls," the prosecution's statement injected an element of sympathy and cites *People v Dalessandro*, 165 Mich App 569; 419 NW2d 609 (1988), to support this contention.

In *Dalessandro*, the defendant was convicted of assault with intent to do great bodily harm, MCL 750.84; and child torture, MCL 750.136a; for his abuse of the 10-month-old son of the defendant's girlfriend. *Dalessandro*, 165 Mich App at 571-572. The defendant raised multiple issues on appeal, including a claim of prosecutorial misconduct. *Id*. at 579. During closing arguments, the prosecutor referred to the 10-month-old child as a "poor innocent baby" and noted

_____

professional conduct or constitutes illegal conduct." *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (footnote omitted).

-8-

the fear the child experienced, stating, "Look at the terror on his face, the sadness in those eyes." *Id*. at 580 (emphasis omitted). This Court determined the prosecution injected sympathy into the case by his consistent reference to the child as a "poor innocent baby," despite the prosecution never explicitly stating the jury should sympathize with the child. *Id*. at 581. This Court reversed the defendant's convictions for the improper closing argument and for ineffective assistance of counsel. *Id*. at 582.

Shumate also relies on *People v Swartz*, 171 Mich App 364, 372; 429 NW2d 905 (1988). In *Swartz*, the defendant was convicted of CSC-I for sexually assaulting a corrections officer while incarcerated at a correctional facility. *Id*. at 366-367. On appeal, the defendant claimed the prosecution injected several impermissible arguments into his opening statement and closing argument. *Id*. at 369. In three of the statements, the prosecution: (1) discussed the complainant and her struggles after the assault; (2) informed the jury that the complainant "had to come here on the last two days and bare her soul to you;" and (3) mentioned the complainant would suffer from the defendant's actions after trial concluded. *Id*. at 372. This Court agreed with the defendant that the prosecution's statements "appear[ed] to be improper appeals to the jury for sympathy," but determined reversal was not warranted because of "a timely requested cautionary instruction." *Id*. at 372-373.

While the prosecution's statement in the present case, "Think about this case, think about two five-year-old little girls, neighbors, friends and what this did," appears to inject an element of sympathy into the matter, it is a single contested statement. Comparatively, in *Dalessandro* and *Swartz*, the prosecution advanced several improper remarks. Even in the context of its closing argument, the prosecution's statement appears to be a standalone comment. Further, before the subject statement, the prosecution discussed witness credibility and the burden of proof. We recognize that the prosecution cannot inject issues into a trial "that are broader than the defendant's guilt or innocence" and the prosecution cannot ask the jury "to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *Lane*, 308 Mich App at 66. But in this matter, the prosecution asked the jury to think about the case, which involved two five-year-old girls, and to convict Shumate based on the proofs presented. Given that prosecutorial errors are reviewed in the context of the entire record, *Dobek*, 274 Mich App at 64, Shumate cannot establish an error occurred. *Carines*, 460 Mich at 763.

## B. VOUCHING

Shumate contends that the prosecution vouched for AM and JK. "Included in the list of improper prosecutorial commentary or questioning is the maxim that the prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' [sic] truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995).

Shumate specifically emphasizes the prosecution's statement, "I have memories of being five years old and I don't know exactly that I could tell you every detail about everything." Shumate argues the foregoing statement "implies that the prosecutor knows [AM] is being truthful." When read in context, the prosecution was discussing the issue of witness credibility and reasonable doubt. As Shumate argues on appeal, he impeached AM's testimony during cross-examination, noting AM was unable to recall her disclosure to CPS and the details of the sexual abuse incidents. Thus, the prosecution was responding to Shumate's criticisms of AM's testimony.

Further, the prosecution did not imply it had special knowledge that AM or JK were being truthful. The prosecution shared that it could not remember details from a young age. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *Dobek*, 274 Mich App at 66. AM and JK's ages were elements established at trial, and it is reasonable to infer no one could perfectly recall events that occurred when they were five years old. "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Id*.

Consequently, the prosecution did not vouch for AM or JK. *Bahoda*, 448 Mich at 276. Shumate is unable to establish an error occurred. *Carines*, 460 Mich at 763. Even assuming an error occurred, Shumate could not establish prejudice. The jury was instructed: (1) that the attorneys' statements and arguments were not evidence; (2) to rely on evidence when rendering its verdict; and (3) to not let sympathy influence its decision. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted). Shumate is not entitled to relief.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Shumate argues that he was deprived of effective assistance of trial counsel. We disagree.

When preserved, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Shumate did not move for a new trial or for a hearing under *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), rendering this issue unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "We review unpreserved claims of ineffective assistance of counsel for errors apparent on the record." *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011).

The Michigan and United States Constitutions guarantee criminal defendants the right to be represented by an attorney. Const 1963, art 1, § 20; US Const, Am VI. "The constitutional right to counsel is not merely the right to have a lawyer stand or sit nearby; rather, a criminal defendant has the right to the effective assistance of counsel." *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023). "To establish a claim of ineffective assistance of counsel a defendant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *Fyda*, 288 Mich App at 450.

"Trial counsel's performance is deficient when it falls below an objective standard of professional reasonableness." *People v Hughes*, 339 Mich App 99, 105; 981 NW2d 182 (2021). To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *People v*

-10-

*Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich App at 242. "The strategy, however, in fact must be sound, and counsel's decisions as to it objectively reasonable; 'a court cannot insulate the review of counsel's performance by calling it trial strategy.' " *People v Douglas*, 496 Mich 557, 585; 852 NW2d 587 (2014), quoting *Trakhtenberg*, 493 Mich at 52. The defendant then must show that "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "Defendant also 'bears the burden of establishing the factual predicate for his claim.' " *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015), quoting *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Shumate claims defense counsel was ineffective when he elicited testimony from Trooper Mead, resulting in Shumate's CSC charge involving a different child to be admitted into evidence. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). However, a strategy must be objectively reasonable. *Douglas*, 496 Mich at 585.

Shumate argues defense counsel's questioning of Trooper Mead constituted deficient performance because the jury became aware of a new case against Shumate involving sexual abuse of another child. Shumate highlights the following exchange during Trooper Mead's cross-examination:

> *Q*. Okay. Now, you reached out after September 22nd of 2022, you started collecting information on a new offense, new offenses that are alleged to have been committed by Mr. Shumate?
>
> *A*. The Prosecutor's office reached out to me and—
>
> *Q*. Right.
>
> *A*. —told me about, right.
>
> *Q*. Correct.
>
> *A*. Yes.
>
> *Q*. And, on September 22nd of 2022 you were present in court for the other case that had been charged, right?
>
> *A*. Yes.
>
> *Q*. So, after that, you started an investigation into other people?
>
> *A*. Yes, sir.

On redirect examination, the prosecution confirmed the charges related to this novel case.

Defense counsel's decision to admit evidence of another charge for a child-related offense against Shumate appears to be deficient when viewed in isolation. However, performance is reviewed in light of all the circumstances of the case. *Jackson*, 313 Mich App at 431. In his opening statement, defense counsel stressed witness credibility and the prosecution's motives, drawing attention to AM's incentive to testify and the prosecution's decision to investigate Shumate in an attempt to "get out the shovel and throw all the mud this way that we can" to secure a conviction against him. Defense counsel further emphasized AM's previous statements to the prosecution that she wanted Shumate dead, and the prosecution's decision to approach AM following the preliminary examination in the other charged offense.

Because no *Ginther* hearing was held and this issue is unpreserved, our review is limited to mistakes apparent on the record. *Armisted*, 295 Mich App at 46. However, defense counsel's strategy was apparent. Defense counsel attempted to discredit AM and the prosecution by drawing out their biases and motives for advancing this case. Defense counsel's conduct was further reasonable considering the admission of Shumate's conviction of assault with intent to commit CSC-II against JK, in conjunction with JK's testimony detailing the sexual abuse she experienced with AM. Defense counsel's decision to attack AM's credibility and her reasons for disclosing the abuse in 2023 rather than in 1997 when the abuse occurred was a sound trial strategy. *Jackson*, 313 Mich App at 431. The fact that defense counsel's strategy did not succeed is not a ground for deficient performance. See *People v Hoang*, 328 Mich App 45, 64; 935 NW2d 396 (2019) ("Matters of strategy that were not successful, in hindsight, do not constitute deficient performance."). Accordingly, defense counsel was not ineffective on this basis. *Fyda*, 288 Mich App at 450.

Shumate further claims defense counsel was ineffective for failing to object to the prosecution's improper comments during its closing argument. As discussed, the prosecution did not engage in misconduct, such that defense counsel was not required to object to the prosecution's statements. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Accordingly, defense counsel was not deficient, and Shumate cannot establish ineffective assistance. *Fyda*, 288 Mich App at 450.

## VI. SENTENCING

Shumate argues that the trial court improperly assessed points for various OVs. We agree the trial court erred when it assessed points for OV 3 under Count 4 and OV 9 for Counts 1 to 3, but Shumate is not entitled to resentencing.

To preserve a sentencing issue for appeal, the issue must be raised "at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the Court of Appeals." *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016) (quotation marks and citation omitted). Shumate objected to OV 8 and OV 9 at sentencing but did not object to OV 3. Thus, this issue is preserved for OV 8 and OV 9 but unpreserved for OV 3.

-12-

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake . . . ." *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

For the unpreserved issue, "this Court may review an unpreserved scoring issue for plain error affecting substantial rights." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014) (quotation marks and citation omitted). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. "Reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon*, 256 Mich App at 329.

"The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence." *People v Muniz*, 343 Mich App 437, 452-453; 997 NW2d 325 (2022). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR, plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

## A. OV 3

Shumate contends that the trial court erred when it assessed five points for OV 3 as to all four counts of CSC-I. Because this issue is unpreserved, Shumate must demonstrate an error occurred. *Carines*, 460 Mich at 763.

OV 3 addresses the physical injury to the victim. MCL 777.33(1). Five points are assessed when "[b]odily injury not requiring medical treatment occurred to a victim." MCL 777.33(1)(e). " '[B]odily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

With respect to Counts 1 to 3, which pertained to "penis to anus" sexual penetrations, Shumate correctly asserts that AM did not testify about a specific bodily injury. However, there was sufficient evidence for the trial court to determine a bodily injury occurred. At trial, AM expressed that she felt "extremely uncomfortable" during the bathroom incidents, describing the abuse as painful. AM further detailed that she screamed out in pain during one assault, which

alerted her brother in the living room. The record established Shumate was in his 30s at the time of the abuse while AM was five years old. Given the age and size difference between the two, in addition to AM's testimony, there was sufficient evidence for the trial court to determine AM experienced "some unwanted physically damaging consequence" from Shumate's sexual abuse. *Id*. Accordingly, the trial court correctly assessed five points for OV 3 for Counts 1 to 3. *Carines*, 460 Mich at 763.

The prosecution concedes the trial court inappropriately assigned five points for OV 3 as to Count 4, which concerned "penis to mouth" sexual penetration. The record did not expressly indicate that AM or JK suffered bodily injury from the blindfold incident. Neither AM nor JK testified about experiencing physical pain or discomfort during that assault. Accordingly, OV 3 should be assessed zero points under Count 4, and the trial court improperly assessed five points. *Muniz*, 343 Mich App at 452-453. Further, this error was obvious as it is undisputed that there was no evidence of pain or bodily injury resulting from Shumate's sexual assault of AM during the blindfold incident. See *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *Puckett v United States*, 556 US 129, 135; 129 S Ct 1423; 173 L Ed 2d 266 (2009) ("A 'clear or obvious' error under the second prong is one that is not 'subject to reasonable dispute.' ").

However, to be entitled to relief, Shumate must also demonstrate the error was prejudicial. *Carines*, 460 Mich at 763. Shumate's total OV score was previously 75 points, but decreases to 70 points to account for the erroneous assignment of five points for OV 3 under Count 4. Shumate's original OV level was IV, which governs total OV scores ranging from 60 to 79 points. MCL 777.62. With the corrected total OV score, Shumate's sentencing-guidelines range remains the same. "Because the scoring errors do not affect the appropriate guidelines range for either offense, defendant is not entitled to resentencing." *People v Baskerville*, 333 Mich App 276, 303; 963 NW2d 620 (2020).

Shumate raises an ineffective-assistance claim related to his counsel's failure to object to the assignment of points for OV 3. However, as noted previously with regard to Counts 1 to 3, there was sufficient evidence to establish bodily injury, such that defense counsel was not deficient for failing to raise a futile objection or raise a meritless argument. *Ericksen*, 288 Mich App at 201. Regarding the assessment of points for OV 3 as to Count 4, even assuming that defense counsel was deficient for neglecting to object, Shumate cannot demonstrate that he was prejudiced by defense counsel's deficient performance as Shumate's sentencing-guidelines range would remain the same. See *Fyda*, 288 Mich App at 450. Thus, Shumate is not entitled to relief.

## B. OV 8

Shumate argues that the trial court improperly assigned 15 points for OV 8 as to all four counts of CSC-I. OV 8 concerns "victim asportation or captivity." MCL 777.38(1). An assignment of 15 points is warranted when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). "A victim is asported to a place or situation involving greater danger when moved away from the presence or observation of others." *Chelmicki*, 305 Mich App at 70-71. "Nothing in the statute requires that the movement be greater than necessary to commit the sentencing offense, and we see no other basis for reading the statute as excluding the movement

of a victim that is only incidental to that offense." *People v Barrera*, 500 Mich 14, 21; 892 NW2d 789 (2017).

At trial, AM testified that Shumate moved her from the living room to the bathroom to sexually abuse her on three occasions. JK testified that Shumate led her and AM from the living room into his bedroom to blindfold and sexually abuse them. AM and JK noted that Shumate removed them from the presence of AM's brother, who was in the living room during the four incidents. Shumate argues there was no inherent danger in moving AM and JK to the bathroom or bedroom compared to the living room. While there may be no inherent danger in those rooms, Shumate moved AM away from her brother for the subject assaults. Asportation to a place of greater danger occurs when a victim is "moved away from the presence or observation of others." *Id*. Consequently, there was sufficient evidence for the trial court to assess 15 points for OV 8. *Muniz*, 343 Mich App at 452-453.

Shumate then contends any movement of AM "was merely incidental and should not be used to score OV 8 at 15 points." Shumate acknowledges the Michigan Supreme Court's holding in *Barrera* and raises the issue for preservation purposes. The *Barrera* Court held, "Nothing in the statute requires that the movement be greater than necessary to commit the sentencing offense, and we see no other basis for reading the statute as excluding the movement of a victim that is only incidental to that offense." *Barrera*, 500 Mich at 21. Because *Barrera* has not been reversed or modified, this Court is bound to follow it. See *People v Adamowicz (On Second Remand)*, 346 Mich App 213, 221; 12 NW3d 35 (2023). Accordingly, the trial court properly assessed 15 points for OV 8.

## C. OV 9

Shumate asserts that the trial court improperly assessed 10 points for OV 9 as to Counts 1 to 3. OV 9 addresses the number of victims in an offense. MCL 777.39(1). An assignment of 10 points is appropriate when "[t]here were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss." MCL 777.39(1)(c). OV 9 applies to "each person who was placed in danger of physical injury or loss of life or property as a victim." MCL 777.39(2)(a).

"MCL 777.39 allows a trial court when scoring OV 9 to count as a victim 'one that is acted on' by the defendant's criminal conduct and placed in danger of loss of life, bodily injury, or loss of property." *People v Ambrose*, 317 Mich App 556, 563; 895 NW2d 198 (2016), quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). "A person may be a victim under OV 9 even if he or she did not suffer actual harm; a close proximity to a physically threatening situation may suffice to count the person as a victim." *Baskerville*, 333 Mich App at 294 (quotation marks and citation omitted). "OV 9 may not be scored on the basis of conduct outside the particular criminal transaction that gave rise to the sentencing offense." *Id*.

The trial court assessed 10 points for OV 9 because it determined AM's brother "was in the vicinity when these events occurred." Proximity is a factor in determining victims under OV 9, but this Court held "close proximity *to a physically threatening situation* may suffice to count the person as a victim." *Id*. (emphasis added). While the trial court determined AM's brother was

in close proximity to the sexual abuse, it never determined whether AM's brother was in a physically threatening situation.

On appeal, the prosecution argues that AM's brother was in danger because Shumate sexually abused AM, who was his daughter, and by being Shumate's biological son, AM's brother was a potential victim of abuse. The prosecution cites no evidence supporting its position, the trial court never made a finding on this issue, and the record additionally does not indicate that AM's brother was in a physically threatening situation. AM and JK did not testify that AM's brother was involved in any of the abuse, and JK specifically mentioned Shumate informing AM's brother that he could not play the blindfold game. Without adequate evidence to support its assessment of OV 9, the trial court erred. *Muniz*, 343 Mich App at 452-453.

Shumate's corrected total OV score for Counts 1 to 3 decreases from 75 points to 65 points for each count. However, Shumate's OV level remains unchanged. See MCL 777.62 (stating OV level IV is for a total OV score between 60 and 79 points). Because Shumate's sentencing-guidelines range for Counts 1 to 3 remains the same, Shumate is not entitled to resentencing. See *People v Teike*, 348 Mich App 520, 537; 19 NW3d 733 (2023).

## D.  RESENTENCING IS NOT REQUIRED

As provided, we conclude that the trial court erred by assessing five points for OV 3 as to Count 4, and 10 points for OV 9 as to Counts 1 to 3. However, because we have found no error in the trial court's scoring of the other challenged offense variables, these scoring errors were harmless. Reducing defendant's OV 3 and 9 scores would not change Shumate's OV level or his sentencing-guidelines range. Therefore, resentencing is not required. See *People v Francisco*, 474 Mich 82, 89-90; 711 NW2d 44 (2006). Nonetheless, we remand for the ministerial task of correcting the SIR to accurately reflect Shumate's total OV score in light of the improper scoring of OV 3 and 9. See *Baskerville*, 333 Mich App at 302 ("Defendant is entitled to have his guidelines scores corrected because those scores may affect decisions made about him by the Department of Corrections.").

We affirm Shumate's convictions and sentences, but remand for the ministerial task of correcting the SIR to properly reflect Shumate's total OV score in light of the erroneous scoring of OV 3 and OV 9. We do not maintain jurisdiction.

/s/ Matthew S. Ackerman
/s/ Mariam S. Bazzi
/s/ Andrew J. Lievense

-16-